## Lee *versus* Gould.

*Construction of contract.—Right of manufacturer to lien on articles manufactured for the value of his labour.—Replevin by owner sustained.*

1. A tanner who contracts to tan hides furnished him by a firm, and to return the leather made from them, in a reasonable time, at a price agreed on for tanning and transportation, payable after delivery, has no property in the leather, after it is finished and ready for delivery, such as will justify its detention by him.

2. Hence, where a quantity of finished leather was carted from the tannery by a different road to a different place from the usual and accustomed place of shipment to the merchants who had furnished the raw hides, and there stored in a barn, never before used as a place of storage, it was *held*, that replevin would lie therefor: and in an action of replevin by the surviving partner of the firm, the instruction of the court, that there had been neither an unlawful taking nor an unlawful detention, and that the plaintiff could not maintain replevin, was error.

ERROR to the Common Pleas of *Monroe county.*

[Lee *v.* Gould.]

This was an action of replevin, brought by David W. Lee, surviving partner of the firm of Charles M. Lcupp & Co., against Jay Gould, for twelve hundred sides of sole leather, of the value of $3500.

The material facts of the case were these:—

In January 1859 the defendant was sole owner of the Gouldsboro tannery, in Luzerne county, comprising some six or scven thousand acres of land, with implements, fixtures, stock, and materials, which before that time had been in the possession of Pratt & Gould, who had carried on tanning at the premises.

On the 28th of January 1859, he conveyed to Charles M. Leupp and David W. Lee each an undivided third part of the property, reserving certain leather on hand, and the right to work up the unfinished stock free of charge.

Leupp and Lee were at that time commission merchants in the city of New York, doing a hide and leather business under the firm of Charles M. Leupp & Co.

On the 1st of February 1859, they made an arrangement with defendant to carry on tanning at Gouldsboro during the term of fourteen months, by contract in writing, of which the following is a copy:—

"It is mutually agreed between Charles M. Leupp & Co. and Jay Gould, that Leupp & Co. shall stock the tannery of said Gould, known as the Gouldsboro tannery, and situated at Gouldsboro, Luzerne county, Pennsylvania, with hides for the term commencing at date until the first day of April 1860—in all fourteen months—say from ten to twenty-five thousand hides per annum, as both parties may deem expedient.

"Conditioned that Jay Gould is to tan said hides into hemlock sole-leather in a good and workmanlike manner, and to return the leather made from them in a reasonable time to said Leupp & Co., and to receive for such tanning and transporting, both ways included, five to five and a half cents per pound, as the account made up in the usual manner may pay. Leupp & Co. to receive five per cent. for purchasing the hides, and six per cent. commission for selling and guaranteeing the sales of the leather, and the loss under five cents and the profits over five and a half cents per pound for tanning to be equally divided. The hides and leather to be kept insured at the joint expense of the parties."

Under this agreement the firm of Leupp & Co., while it existed, furnished a number of hides. Charles M. Leupp died in October 1859, and the firm then went into liquidation. After Leupp's death a question arose between Lee and Gould as to the rights of the latter to the possession of the leather remaining at the tannery, Lee claiming to hold the place of the firm under the contract. Gould objected, that by it a special partnership was constituted between Charles M. Leupp & Co. and himself under

[Lee *v.* Gould.]

the name of Jay Gould, and there being no provision for its continuance, the death of Leupp in October 1859 dissolved any common interest before existing, and left him the right to settle up the concern, with liability to account, as in ordinary cases.

Having been informed that Lee was about applying for relief to the Common Pleas of Luzerne county, Gould, instead of sending the leather to New York, or to the railroad station, from which it was usually shipped for that city, removed about twelve hundred sides of sole-leather to Naglesville, in Monroe county, near the Tobyhanna station, on the Delaware, Lackawanna and Western Railroad, where it was stored up (or, as plaintiff averred, concealed) in a barn belonging to Samuel Case.

On the 9th of April 1860, Lee sued out this writ of replevin. The writ called for twelve hundred sides, and there being a few hundred lacking it was agreed by the parties that Gould should haul enough over to make up the complement.   To this replevin defendant gave a claim property bond, and to the declaration pleaded *non cepit*, and property, accord and satisfaction, with the following special plea of release :—

"And the said J. Gould, by William Davis, his attorney, comes and defends the wrong and injury when, &c., and says that he, the said plaintiff, ought not to have or maintain his aforesaid action hereof against the said defendant, because he says that on the twenty-first day of August, in the year of our Lord one thousand eight hundred and sixty, at the county aforesaid, the said plaintiff, by his certain writing of release, sealed with his seal, and now shown to the said court here, the date whereof is a certain day and year therein mentioned, to wit, the day and year aforesaid, did release the said defendant from the aforesaid action—as by the said deed or writing of release, reference being thereunto had, will more fully appear—and this the said defendant is ready to verify ; wherefore he prays judgment if the said plaintiff ought to have or maintain his aforesaid action thereof against him, &c.

"And for further plea in this behalf the said defendant, Jay Gould, by leave of the court here for this purpose first had and obtained, according to the form of the statute in such case made and provided, says that the said plaintiff ought not to have or maintain his aforesaid action hereof against the said defendant, because he says that on the twenty-first day of August, in the year of our Lord one thousand eight hundred and sixty, at the county aforesaid, a certain written agreement, sealed with the seals of the said plaintiff and the said defendant, and now shown to the said court here, the date whereof is a certain day and year therein mentioned, to wit, the day and year last aforesaid, was made, entered into, executed, and concluded, by and between the said plaintiff and the said defendant, wherein and whereby, .

[Lee *v.* Gould.]

for the consideration therein mentioned, it was stipulated and agreed that the said plaintiff should release the said defendant from all claims or demands, of any name or nature, excepting as in said written agreement is excepted, and the said defendant avers that the claim or demand of the said plaintiff, in the aforesaid action, is not excepted in said written agreement, as by the said written agreement, reference being thereunto had, will more fully appear—and this the said defendant is ready to verify. Wherefore he prays judgment," &c.

After writ issued, proceedings in equity were instituted by the plaintiff against defendant in the Common Pleas of Luzerne county, where, on the 21st of August following, they executed and filed of record a mutual agreement and release under seal, which was the subject of the special plea above.

On the 25th of December 1862, the cause being at issue, the parties went to trial, when a verdict was rendered for the defendant.

The errors assigned were that the court erred,

1. In instructing the jury that " there was neither an unlawful taking nor an unlawful detention, and therefore the plaintiff cannot maintain replevin. Whatever remedy he may have under his contract, he cannot recover in this form of action, and the verdict of the jury must be for the defendant.

2. In not charging the jury that although it is a contract of bailment, Jay Gould, the bailee, had no lien upon the leather for work, &c., as by the express terms of the contract he had no right to retain the possession of it, as he had expressly stipulated to return it to the firm of Charles M. Leupp & Co., in New York, and had also agreed upon a future day of payment. A detention of the leather, under such circumstances, was inconsistent with the terms of the contract, and by the terms of the contract Jay Gould deprived himself of the common law incident of lien.

3. In not charging the jury that if the defendant had not stipulated against a retention of the leather, and for future payment for the tanning; his malfeasance in removing the leather from the Gouldsboro tannery, in violation of his contract, for the purpose of eluding the pursuit of the rightful owners, would have destroyed any lien that he might otherwise have had upon the leather.

4. In not charging the jury that if the property in the leather was in the plaintiffs at the time it was seized by the sheriff under the writ of replevin, they had the right to the immediate and exclusive possession, for general property has possession annexed to it by construction of law, and the plaintiff can recover in this form of action.

11 W<span style="font-variant:small-caps">r</span>.—26

[Lee *v.* Gould.]

*Charlton Burnett* and *G. B. Nicholson*, for plaintiff in error.

*Davis, Dreher & Jones*, for defendant.

The opinion of the court was delivered, May 4th 1864, by

READ, J.—The error really complained of is, the direction of the court to the jury to find for the defendant. Every question of fact was thus taken away from the jury, and unless the court were right on the point of law, the judgment must be reversed. The court held that the contract created no partnership between the parties, but simply a bailment, and that the relation was that of bailor and bailee. If, therefore, the New York firm, at the time of issuing the replevin, was entitled to the possession of the sides of hemlock sole-leather, the court were in error in saying the plaintiff could not recover. The contract was to return the leather made from the hides furnished in a reasonable time to Leupp & Co. The evidence on this point was, that the leather was finished and ready for delivery, but instead of sending in the usual and ordinary way to the Gouldsboro station, on the Delaware, Lackawanna, and Western Railroad by the plank-road, they were conveyed in an almost opposite direction, several miles through the woods, to the barn of Case, where the defendant, neither before nor since, ever stored any leather. It was placed in the barn, boarded up tightly and concealed from view. The evidence clearly shows it never was the intention of Gould to send this leather, according to contract, to New York, but to retain it and sell it, as he afterwards did, in another market, Philadelphia, as his own. He had no lien upon it, for by the terms of the contract, the payment for tanning and transportation was to be subsequent to the delivery. The court were therefore clearly in error in saying there was no evidence that the time was unreasonable; on the contrary, if the jury believed the evidence, Gould had by his own conduct put an end to all rights of possession over the property itself, and he could only look to the plaintiff personally for the future fulfilment of his part of the contract. The evidence relative to the alleged release is not sufficiently full to enable us to express a decided opinion upon its effects; and as we are not called upon to do so in the present aspect of the case, we decline giving any opinion upon it.

Judgment reversed, and *venire de novo* awarded.

AGNEW, J., was absent at Nisi Prius when this case was argued.